IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) WADID DAOUD, an individual; and )
)
(2) AMERICAN SUPPLY 2020, INC., a )
Florida Corporation, )
)
    Plaintiffs and Counter Defendants, )
)
v. )     Case No. 21-CV-476-TCK-JFJ
)
(1) WELDNOW, LLC an Oklahoma )
Limited Liability Company; )
)
(2) BUY BYE INVENTORY, LLC, )
an Oklahoma Limited Liability )
Company; )
)
(3) CD INVESTMENT PARTNERS, )
LLC, an Oklahoma Limited Liability )
Company; )
)
(4) AGONOW, LLC, an Oklahoma )
Limited Liability Company; )
)
(5) CD INDUSTRIAL, LLC, an )
Oklahoma Limited Liability )
Company; )
)
(6) LARRY D. DAVIS, an individual; )
and )
)
(7) MICHAEL DENNING, an )
Individual, )
)
)
    Defendants and Counter Claimants. )

**OPINION AND ORDER**

    Before the Court is the Plaintiffs' and Counter Defendants' Wadid Daoud ("Daoud") and American Supply 2020, Inc. ("AMSU") (collectively, "Plaintiffs"), Motion to Dismiss

Defendants' and Counter Claimants' Counterclaims filed pursuant to Federal Rule of Civil Procedure 12(b)(6) and 9(b). (Doc. 30). Defendants, WeldNow, LLC ("WeldNow"), Buy Bye Inventory, LLC ("Buy Bye"), CD Investment Partners, LLC ("CD Investment"), AgoNow, LLC ("AgoNow"), CD Industrial, LLC ("CD Industrial"), Larry D. Davis ("Davis"), and Michael Denning ("Denning"), (collectively, "Defendants"), filed a Response (Doc. 33), and Plaintiffs filed a Reply. (Doc. 34). Plaintiffs seek dismissal of Defendants' Counterclaims for breach of contract and actual and/or constructive fraud.

## I. BACKGROUND

Central to Defendants' Counterclaims are two Operating Agreements that were created to further a joint venture between Plaintiffs and Defendants in the welding industry. One Operating Agreement was created for WeldNow, and one was created for CD Investment. At the time the new entities were formed in January 2021, AMSU became a member of WeldNow and Daoud became a member of CD Investment. Effective January 1, 2021, Daoud also became a member in an existing entity operated by Defendants called Buy Bye.

After the Operating Agreements were executed, Plaintiffs made combined cash payments of over $450,000 to WeldNow and CD Investment. Under the Operating Agreements, the members of the respective LLC's were not obligated to make additional contributions to the companies unless all members agreed to do so. (Ex. "1", Section 3.7 of WeldNow Operating Agreement; Ex. "2", Section 3.7 of CD Investment Operating Agreement). Additionally, the Agreements provide that any amendments "must be memorialized in writing" and no amendment may "enlarge" the obligation of any member unless approved by a unanimous vote of the members. (Ex. "1", Sections

12.1 and 12.2 of WeldNow Operating Agreement; Ex. "2", Sections 12.1 and 12.2 of CD Investment Operating Agreement).

Plaintiffs contend "Defendants fail to attach the operative contracts that are central to their breach of contract claim, and the conclusory allegations they offer in support of their claim are in direct conflict with the provisions of the governing contracts." (Doc. 30 at 2). Plaintiffs further assert "Defendants fail to state a claim for fraud because their allegations are: (1) based on the identical, conclusory allegations that are insufficient to support a breach of contract; and (2) because they lack the particularity required by applicable law. Therefore, Defendants' Counterclaims fail as a matter of law and the Court should dismiss them." *Id*.

Defendants claim, however, that Plaintiffs agreed to fund, but did not fund, what Defendants describe as Plaintiffs' share of the "capital requirements" of WeldNow and CD Investment. Defendants contend these capital requirements total over $600,000 in additional cash owed by Plaintiffs to WeldNow and $1,000,000 to CD Investment. (Doc. 27, ¶¶ 6, 7, 14, 17-19).

In addition to breaching the Operating Agreements, Defendants assert Plaintiffs repeatedly and affirmatively made misrepresentations to Defendants which were calculated to harm Defendants in the marketplace. Thus, Defendants contend they have properly plead an independent, separate, and distinct fraud claim and have satisfied the particularity requirement imposed by Fed. R. Civ. P. 9(b).

### II. MOTION TO DISMISS STANDARD

A Complaint must contain "a short and plain statement of the claim, showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A Complaint must contain enough "factual matters, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (citations omitted). The trial court must insist the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible. *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008). The mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe [the] plaintiff has a reasonable likelihood of mustering factual support for [the] claims." *Id.* at 1247.

"The nature and specificity of the allegations required to state a plausible claim will vary based on the context." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1215 (10th Cir. 2011). A plaintiff is not entitled to file a bare bones complaint and fill in the necessary facts after discovery is complete. *London v. Beaty*, 612 Fed. Appx. 910, 916 (10th Cir. 2015). The trial court must insist that the plaintiff put forward specific, non-conclusory factual allegations, to assist the court in determining whether the complaint is plausible. *Robbins*, 519 F.3d at 1249.

Furthermore, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Although malice, intent, knowledge, and other conditions of a person's mind may be alleged generally, "[a]t a minimum…a plaintiff [must] set forth the 'who, what, when, where and how' of the alleged fraud." U.S. ex. Rel. *Sikkenga v. Regence Bluecross Blueshield of Utah*, 472 F.3d 702, 726-27 (10th Cir. 2006). In other words, a party alleging fraud must "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1236 (10th Cir. 2000) (quotations omitted). "Rule 9(b)'s purpose is to

4

afford [the] defendant fair notice of [the] plaintiff's claims and the factual ground upon which [they] are based." *Id.* (quotations omitted).

### III. ANALYSIS

#### A. Breach of Contract

Under Oklahoma law, to recover on a breach of contract claim, a plaintiff must prove: (1) the formation of a contract; (2) breach of the contract; and (3) damages as a result of the breach. *Digital Design Group, Inc. v. Information Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001).

Here, Defendants allege that Plaintiffs agreed to make additional capital contributions to WeldNow and CD Investment beyond the initial contributions required by the Operating Agreements. Defendants contend Plaintiffs' admission that they made additional capital contributions (Doc. 1, ¶¶ 20-21), nullifies their denial of an agreement between the parties.

Defendants also assert Plaintiffs breached the agreement regarding additional capital contributions by failing to pay the agreed amount, and Defendants have incurred damages as a result of the breach. (Doc. 27, ¶¶ 22-23). Thus, Defendants have satisfied the pleading requirements set forth in Fed. R. Civ. P. 8(a)(2) and have stated a claim for breach of contract.

Notwithstanding the foregoing, Plaintiffs argue that Defendants have failed to state a claim for breach of contract for three reasons. Plaintiffs first argue that Section 3.7 of each Operating Agreement prohibits the imposition of additional capital contribution requirements and cite Section 3.7 which provides that "Members shall not be obligated to contribute additional capital to the Company unless all of the Members agree to do so." (Doc. 30-1, § 3.7); (Doc. 30-2, § 3.7). In their Counterclaims, however, as discussed *supra*, Defendants specifically allege that Plaintiffs

agreed to increase their capital contributions and repeatedly reaffirmed their commitments to do so. (Doc. 27, ¶¶ 6-9].

Plaintiffs next argue that Defendants' breach of contract claim should be barred because Sections 12.1 and 12.2 of the Operating Agreements provide that any amendment must be "memorialized in writing" and that no amendment may "enlarge the obligations of any Member" unless approved by a unanimous vote of the Members. (Doc. 30-1, §§ 12.1, 12.2); (Doc. 30-2, §§ 12.1, 12.2). Defendants, however, do not allege that the parties amended the Operating Agreements. Rather, Defendants allege that, as contemplated by Section 3.7, the parties agreed to make additional contributions in proportion to the number of units held. In short, Defendants argue no amendments to the Operating Agreements were necessary or required before the parties could agree to make additional capital contributions as contemplated by Section 3.7. Therefore, Defendants contend Plaintiffs' assertion that Defendants' breach of contract claim should be dismissed because of a lack of written amendments to the Operating Agreements is unfounded.

Plaintiffs' final argument is that the integration clause contained in the Operating Agreements establishes that the Operating Agreements contain the entire agreement between the parties with respect to required and agreed upon capital contributions. Again, Defendants refer to the language in Section 3.7 which contemplates agreements between the parties regarding additional capital contributions after the Operating Agreements were executed.

The Court finds Defendants have alleged sufficient facts in support of their Counterclaim for breach of contract pursuant to the standards set forth in *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

**B. Fraud**

**1. Independent Basis for Fraud Claim**

"Where a party sues on a theory of breach of contract, it cannot also bring a claim alleging fraud unless the 'tortious act [is] sufficiently independent of the breach of contract.'" *Myklatun v. Flotek Industries, Inc.*, 734 F.3d 1230, 1236 (10th Cir. 2013) (applying Oklahoma law); *McGregor v. Natl. Steak Processors, Inc.,* 11-CV-0570-CVE-TLW, 2012 WL 314059, at *3 (N.D. Okla. Feb. 1, 2012) (citation omitted). A plaintiff must also incur actual damages as a result of the commission of the alleged fraud rather than damages stemming merely from the alleged breach of contract. *See McGregor*, 2012 WL 314059 at *3 (dismissing the plaintiff's fraud claim where the plaintiff failed to set forth any damages he specifically incurred as a result of the fraud); *see also Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 676 (10th Cir. 2007) (dismissing the plaintiff's fraud claim where the "damages claimed under the breach of contract claim and the fraud claim are identical," and any damages allegedly arising from the plaintiff's fraud claim were recoverable under the breach of contract claim).

Plaintiffs assert in their Motion that Defendants' fraud claim is based on the same conduct, allegations and harm that gives rise to Defendants' breach of contract claim and, thus, must be rejected as a matter of law. Defendants contend, however, their fraud claim is not based on the mere fact that Plaintiffs breached the agreement, and their fraud claim does not seek the same damages suffered as a result of Plaintiffs' breach of the agreement.

Instead, Defendants allege their fraud claim arises out of Plaintiffs' various affirmative misrepresentations, including, but not limited to:

> repeated affirmative misrepresentations that their share of additional capital contributions was forthcoming and that Plaintiffs were going to invest in certain warehouses to support WeldNow's business and material omissions which were all

7

> calculated to deceive and mislead Defendants, falsely portray that Plaintiffs were fully committed to make WeldNow a success, lead Defendants on, keep Defendants engaged with and committed to its relationship with Plaintiffs, cause Defendants to dedicate significant additional resources and efforts for Plaintiffs' benefit and to Defendants' detriment and, at the same time, allow Plaintiffs to obtain valuable knowledge and information regarding Defendants' business activities, practices, strategies, customers and suppliers [1] which Plaintiffs are using to directly compete with Defendants and harm Defendants in the marketplace.

(Doc. 33 at 11-12); *See F.D.I.C. v. Hamilton*, 12 F3d 854, 862-63 (10th Cir. 1997) (*citing Citation Co. Realtors v. Lyon*, 610 P.2d 788, 790-91 (Okla. 1980), *Furr v. Thomas*, 817 P.2d 1268, 1272 (Okla. 1991)) (noting that an independent fraud claim is available together with a breach of contract claim where the formation of the contract is premised upon an intentionally deceptive promise to act and the defendant has not performed subsequent actions "toward the fulfillment of the promise"). Defendants' claim that Plaintiffs' deceit caused Defendants to suffer damages "beyond the damages Defendants suffered as a result of Plaintiffs' failure to pay their agreed upon share of additional capital requirements." (Doc. 33 at 12).

Defendants, allege that they relied on Plaintiffs' misrepresentations and nondisclosures of material facts and: 1) continued to fund more than their share of the expenses and capital

---

[1] Defendants set forth the valuable information Plaintiffs obtained from Defendants through their deceptive scheme which includes: "market data and analysis outlying the Welding market opportunity and strategies to capture market share; customer segmentation data along with the market based financial programming for specific customers and buying groups; product category coverage maps with supplier alignment with detailed assorting planning and financial modeling; complete cost profile composition including key factors like transportation and working capital investment structure; customer experience definitions including inventory stocking strategy to support service levels; supply chain factors including cycle times from suppliers and time in transit to customers; sales processes including lead generation, prospect development, customer relationships, and revenue pipeline management; merchandising processes including category management, pricing, inventory replenishment algorithms; and detailed information regarding customers, suppliers, and third-party partners." (Doc. 33 at 12). Plaintiffs contend these are new allegations which must be disregarded for purposes of Fed.R.Civ.P. 12(b)(6) dismissal, but ultimately do not alter the result in this case." (Doc. 34 at 4).

requirements of WeldNow; 2) placed most of their time, resources and focus on the success of WeldNow which would have otherwise been available for the business activities of AgoNow and their other business interests; 3) shared valuable business information, models and strategies with Plaintiffs; and 4) introduced Plaintiffs to AgoNow's customers and suppliers. Ultimately, Defendants argue Plaintiffs are improperly using the information, as well as customer and supplier relationships that they gained through their deception, to compete with Defendants and harm them financially.

Finally, Defendants claim WeldNow spent considerable time and money planning and evaluating the Houston market for expansion and a new distribution center (the "WeldNow Houston Plan"). A detailed analysis was prepared for the WeldNow Houston Plan that included detailed information regarding potential customers, suppliers, product coverage and supply/demand in the area. "Defendants recently discovered that Plaintiffs are apparently using the WeldNow Houston Plan and the related detailed information/strategy developed by WeldNow to open facilities in Houston to compete with WeldNow. Similarly, based on information and belief, Plaintiffs are utilizing information developed/prepared by WeldNow to seek membership into the Independent Welding Distribution Cooperative and Plaintiffs have been using WeldNow's line card to compete with WeldNow and harm WeldNow in the marketplace." (Doc. 33 at 13).

In October and November of 2021, after obtaining valuable knowledge/information from WeldNow, "the employees of WeldNow which Plaintiffs caused WeldNow to hire abruptly resigned, without notice, to apparently work with Plaintiffs in direct competition to WeldNow and, after their abrupt resignation, it appears that WeldNow's computer system was accessed without authorization." *Id*. at 13-14.

In summary, Defendants argue that, in addition to breaching the agreement to contribute their share of additional capital, Plaintiffs went further by engaging in a deceitful scheme for purposes of benefiting Plaintiffs to the harm and detriment of Defendants. The Plaintiffs' actions, and the resulting harm, as set forth by Defendants are separate, distinct, and independent from Plaintiffs' breach of the agreement. Thus, the Court finds Plaintiffs' Motion to Dismiss Defendants' fraud counterclaim is denied.

**2. Particularity Requirements of Fed.R.Civ.P. 9(b)**

Although Rule 9(b) imposes a heightened duty in pleading a fraud claim, not every detail and misdeed must appear in the pleadings to survive Rule 9(b) scrutiny. *Farlow v. Peat, Marwick, Mitchell & Co.,* 956 F.2d 982 (10th Cir. 1992). Indeed, the "primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Id.*

While Defendants' Counterclaim does not specify all the details relating to Plaintiffs' alleged deceptive scheme, it includes sufficient detailed allegations to state a claim for fraud and to put Plaintiffs on sufficient notice of the grounds for the fraud claim. While Plaintiffs assert in their Motion that Defendants fail to identify the person to whom Plaintiffs made their misrepresentations, a review of the Counterclaim reveals that Defendants specifically identify Daoud, and assert that he individually and on behalf of AMSU, made misrepresentations on a weekly basis to Davis. (Doc. 27, ¶ 6). *See Medical Consultants, Inc.*, 170 F.R.D at 497 ("[W]hen plaintiff's allegations involve multiple defendants engaging in fraudulent conduct over an extended period of time and the defendants' alleged role in that conduct is clearly identified in the pleadings, the Court will not dismiss the complaint if defendants have received fair notice of the claims against them."). Moreover, Defendants specifically allege that at least some of the

misrepresentations occurred during an in person meeting between Daoud and Davis in Mount Vernon, Illinois on May 12-13, 2021. (Doc. 27, ¶ 8). Thus, the Counterclaim satisfies the requirements of Rule 9(b).

The Court finds Defendants have pled their fraud claim with sufficient detail and particularity to afford Plaintiffs fair notice of Defendants' claim.

### IV. CONCLUSION

Accordingly, the Court denies Plaintiffs' Motion to Dismiss Defendants' Counterclaims (Doc. 30).

**IT IS SO ORDERED this 1st day of April, 2022.**

TERENCE C. KERN
United States District Judge