IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| 1. WADID DAOUD, an individual; and<br>2. AMERICAN SUPPLY 2020, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>1. WELDNOW, LLC, an Oklahoma Limited Liability Company;<br>2. BUY BYE INVENTORY, LLC, an Oklahoma Limited Liability Company;<br>3. CD INVESTMENT PARTNERS, LLC, an Oklahoma Limited Liability Company;<br>4. AGONOW, LLC, an Oklahoma Limited Liability Company;<br>5. CD INDUSTRIAL, LLC, an Oklahoma Limited Liability Company;<br>6. LARRY D. DAVIS, an individual; and<br>7. MICHAEL DENNING, an individual,<br><br>Defendants. | Case No. 21-CV-476-SEH-JFJ |

## OPINION AND ORDER

Before the Court is (1) Defendants/Counter Claimants' CD Industrial, LLC, Larry D. Davis, and Michael Denning's Partial Motion for Summary Judgment ("Partial Motion") (ECF No. 70) and (2) all Defendants' Motion for Summary Judgment ("Motion") (ECF No. 72).[1] The parties consented to disposition of both motions by a United States Magistrate Judge. ECF No. 87. The Court consolidates decision on both motions into this Opinion and Order.

---

[1] Plaintiffs object to Defendants' filing two motions for summary judgment without leave of court. *See* LCvR 56-1(a) (limiting party to one motion for summary judgment). Defendants concede they failed to review this local rule and ask the Court to consider the two motions together or, alternatively, consider only the Partial Motion. ECF No. 82 at 2 n.1. In the interest of resolving all issues in advance of trial, the Court permits Defendants leave to present two motions for summary judgment.

For reasons explained below, Defendants are entitled to summary judgment on the breach of contract claim against Larry D. Davis. Defendants failed to demonstrate entitlement to summary judgment on any other claims.

I.   **Facts in Summary Judgment Record[2]**

The following undisputed facts are relevant to both motions. Plaintiffs/Counter Defendants Wadid Daoud ("Daoud") and American Supply 2020, Inc. ("AMSU") (collectively, "Plaintiffs") brought this case against seven Defendants/Counter Claimants: (1) WeldNow, LLC ("WeldNow"), (2) Buy Bye Inventory, LLC ("Buy Bye"), (3) CD Investment Partners, LLC ("CD Investment"), (4) AgoNow, LLC ("AgoNow"), (5) CD Industrial, LLC ("CD Industrial"), (6) Larry D. Davis ("Davis"), and (7) Michael Denning ("Denning") (collectively, "Defendants"). Plaintiffs sue Defendants for declaratory judgment, breach of contract, and unjust enrichment, all resulting from Plaintiffs' expulsion from a joint business venture. ECF No. 2 (Compl.).

In January 2021, certain Plaintiffs and certain Defendants signed two operating agreements to create WeldNow and CD Investment as limited liability companies ("LLCs"). The WeldNow operating agreement ("WeldNow Operating Agreement") was entered into by AMSU and AgoNow. Daoud signed on behalf of AMSU, and Davis signed on behalf of AgoNow. ECF No. 76-3. The CD Investment operating agreement ("CD Investment Operating Agreement") was entered into by Daoud as an individual, Denning as an individual, and CD Industrial. Davis signed on behalf of CD Industrial. ECF No. 76-4. In January 2021, Daoud joined Buy Bye as a member,

---

[2] The Motion (ECF No. 72) does not cite to or attach a single piece of evidence in support of Defendants' statement of facts, as required by Federal Rule of Civil Procedure 56(c) and Local Civil Rule 56.1(c)-(e). The Partial Motion cites to one piece of evidence: Plaintiff Wadid Daoud's deposition taken on September 28, 2023. ECF No. 70-1. Plaintiffs attach the operating agreements and other relevant evidence in their response briefs in support of their statement of facts, *see* ECF Nos. 76, 78, and most facts in this section are taken from Plaintiffs' responsive briefing.

along with CD Industrial and Denning. ECF No. 72 at 2 (Def. Undisputed Material Fact No. 7); ECF No. 78-2 (Amendment to Buy Bye operating agreement).[3] Davis signed the Buy Bye amendment on behalf of CD Industrial. Davis became the Manager for CD Investment, WeldNow, and Buy Bye. ECF Nos. 76-3, 76-4, 78-2.

Relevant to summary judgment, Section 3.7 of the WeldNow and CD Investment Operating Agreements provides that the members of each LLC "shall not be obligated to contribute additional capital to the Company unless all of the Members agree to do so." ECF Nos. 76-3 (WeldNow Operating Agreement); 76-4 (CD Investment Operating Agreement). Article IX, Section 9.2.B of those Operating Agreements provides that when a member is "dissociated" from the LLC under specified circumstances, "the members shall acquire the Dissociated Member's Units that are to be transferred at a price equal to the Calculated Value corresponding to the Units to be transferred." ECF Nos. 76-3, 76-4. The "Calculated Value" is defined as "an amount as of the Event of Dissociation Notice Date equal to five (5) times the previous twelve (12) months' EBITDA of the company multiplied by the percentage of Units owned by the Dissociated Member." ECF Nos. 76-3, 76-4.[4] Section 12.2 of the Operating Agreements prohibits amendment to Section 3.7 or Article IX "without the unanimous vote of the Members." ECF Nos. 76-3, 76-4.

After execution of the Operating Agreements, AMSU made payments to WeldNow totaling $252,000, and Daoud made a payment to CD Investment of $200,875. ECF No. 72 at 2

---

[3] No party attached the Buy Bye operating agreement ("Buy Bye Operating Agreement") as evidence. Plaintiffs attached an amendment to the Buy Bye Operating Agreement dated January 2021. ECF No. 78-2. It is unknown whether the Buy Bye Operating Agreement contains similar language to the CD Investment and WeldNow Operating Agreements. However, the parties do not specifically rely on language in the Buy Bye Operating Agreement, and the Court finds this document is not necessary to reach a summary judgment disposition.

[4] EBITDA is generally short for earnings before interest, taxes, depreciation, and amortization.

(Def. Undisputed Material Fact No. 9). Approximately $185,000 of the payment to CD Investment was used to purchase a warehouse in Illinois (the "Warehouse"). ECF No. 76 at 5 (Pl. Response to Def. Material Uncontroverted Fact No. 9); ECF No. 77-3 (Vast Bank statement dated 3/31/21) (sealed).

In June 2021, Defendants presented to Daoud an "Allocations Memo," stating that Plaintiffs owed additional capital to WeldNow in the amount of $600,997. *See* ECF No. 77-1 at 4 (Allocations Memo dated June 29, 2021) (sealed).[5] Plaintiffs refused to pay this amount. ECF No. 70-1 (Daoud Dep.) at 167:25-171:9.

In July 2021, CD Industrial and Denning amended the CD Investment Operating Agreement without Daoud's consent, adding a new Article XIV titled "Expulsion of Members." ECF No. 76-1. The amendments permitted CD Industrial and Denning to expel Daoud as a member from CD Investment as of July 2021, and it permitted Daoud's units in the LLC to be bought back for a total of $100. ECF No. 76-1 at 4. Based on the authority in the amendments, CD Industrial and Denning then resolved to expel Daoud, and they paid him $100 total for his units in CD Investment. ECF No. 76-1 at 11-16. The WeldNow and Buy Bye Operating Agreements were similarly amended to permit involuntary expulsion of AMSU and Daoud, respectively, and to permit buyout of their units in those LLCs for a total of $100. *See* ECF No. 76 at 6-7 (Pl. Response to Def. Material Uncontroverted Fact No. 9); ECF No. 72 at 3 (Def. Material Uncontroverted Fact No. 12). The amendments to all three Operating Agreements are collectively referred to as the "Amendments."

---

[5] Although Defendants refer to "discussions" between Plaintiffs and Defendants preceding the Allocations Memo, *see* ECF No. 72 at 2, 8, Defendants cite no deposition testimony or other evidence regarding discussions or any agreement following such discussions.

After the expulsions and buyouts, AgoNow took out a $2.5 million line of credit in 2022, secured by the Warehouse. ECF No. 77-5 (2022 Vast Bank Credit Memo). A 2020 appraisal of the Warehouse valued it at $380,000. ECF No. 77-6 (Appraisal dated July 7, 2020).

## II. Parties' Claims and Motions for Summary Judgment

Plaintiffs filed this lawsuit on November 5, 2021, asserting three causes of action against Defendants.

First, Plaintiffs seek a declaratory judgment that: (1) "the purported 'Amendment' adding a 'Article XIV,' [which] circumvent[ed] the unanimous consent provision of the contract, was unlawful and ineffective"; (2) "the 'repurchase' procedure Defendants added to the Amended Operating Agreements is unlawful under 18 O.S. § 2036, which requires that expulsion provisions in an operating agreement provide for a reasonable buyout of the expelled member's units"; and (3) "Plaintiffs should be reinstated as members of the Defendant LLCs" (First Cause of Action). ECF No. 2 at ¶ 30. *See also id.* ¶ 38 (summarizing declaratory relief as seeking a declaration that (1) Plaintiffs were wrongly expelled from the LLCs and should be reinstated as lawful members; and (2) the buyout provisions in the Amendments are unreasonable under 18 O.S. § 2036).

Second, Plaintiffs claim all Defendants breached the Operating Agreements by (1) "demanding Plaintiffs make contributions to which they did not consent, and in violation of the express terms of the Operating Agreements"; and (2) "unilaterally and unlawfully amending the [Operating] Agreements and then using those provisions to expel Plaintiffs without unanimous consent" (Second Cause of Action). *Id.* at ¶ 32. Plaintiffs seek contract damages in amounts representing the fair value of the respective membership units, costs and attorney fees, and other amounts potentially uncovered during discovery. *Id.* at ¶ 33.

Third, Plaintiffs claim that Defendants were unjustly enriched when they unlawfully amended the Operating Agreements and failed to compensate Plaintiffs for the fair value of payments they made into CD Investment and the other Defendant LLCs (Third Cause of Action). *Id.* ¶ 35-36. Plaintiffs further claim that CD Investment obtained legal title to the Warehouse "through a method which violates equity and good conscience," because CD Investment used Daoud's money to make the purchase and then expelled him without any reimbursement. *Id.* ¶ 37.

In their prayer for relief, Plaintiffs seek the declaratory relief explained above, actual damages, imposition of a trust on CD Investment's ownership interest in the Warehouse, costs, interest, and attorney fees. ECF No. 2 ¶ 38.

Defendants filed counterclaims against Plaintiffs for breach of contract and actual and/or constructive fraud. ECF No. 26. Defendants allege that Plaintiffs breached the WeldNow and CD Investment Operating Agreements by "failing and refusing to pay their 49% share of WeldNow's capital requirements and to provide the $1,000,000 funding for the purchase of the Warehouses by CD Investment." *Id.* at 13 ¶ 21. Defendants further allege that Plaintiffs engaged in fraud by making false representations about their intent to pay their 49% share of WeldNow's capital requirements. *Id.* at 13-14.[6]

Defendants filed two separate motions for summary judgment. CD Industrial, Davis, and Denning filed the Partial Motion (ECF No. 70), arguing that Plaintiffs fail to allege sufficient facts to support the specific claims against them and/or they were wrongfully sued as individuals. All Defendants filed the Motion, arguing they are entitled to summary judgment on various grounds

---

[6] United States District Judge Terence Kern previously denied Plaintiffs' motion to dismiss Defendants' counterclaims. ECF No. 35.

(ECF No. 72).[7]  Plaintiffs filed separate responses to each.  ECF No. 76 (Plaintiffs' Response to Motion); ECF No. 78 (Plaintiffs' Response to Partial Motion).  Defendants filed a combined Reply in support of both motions.  ECF No. 82 (Defendants' Reply to Motion and Partial Motion).

Plaintiffs did not file a cross-motion for summary judgment on their claims.  No party filed a motion for summary judgment on Defendants' counterclaims.  The only issues presented are whether any Defendants are entitled to judgment as a matter of law on Plaintiffs' claims, based on the current evidentiary record.

### III.  Summary Judgment Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.*  As the court makes this determination, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  *Id.* at 255.

A party opposing a motion for summary judgment may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact.  Fed. R. Civ. P. 56(c); *see Cone v. Longmont United Hosp. Ass'n*, 14 F.3d 526, 530 (10th Cir. 1994) ("Even though all doubts must be resolved in [the non-movant's] favor, allegations alone will not defeat summary judgment.") (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)).  "In a response to a

---

[7] Defendants original motion for summary judgment (ECF No. 71) was filed in error, was previously terminated as a pending motion, and has not been considered by the Court.

motion for summary judgment, a party cannot rely on ignorance of facts, on speculation, or on suspicion and may not escape summary judgment in the mere hope that something will turn up at trial." *Conaway v. Smith*, 853 F.2d 789, 794 (10th Cir. 1988) (citations omitted). The inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

### IV.  Motion – All Defendants (ECF No. 72)

#### A.  Breach of Contract

Under Oklahoma law, the elements of a breach of contract claim are (1) formation of a contract; (2) breach of the contract; and (3) damages directly resulting from that breach. *Digital Design Grp., Inc. v. Info. Builders, Inc.*, 24 P.3d 834, 843 (Okla. 2001). A contract must be interpreted "to give effect to the mutual intention of the parties" at the time they formed the contract. Okla. Stat. tit. 15, § 152. A contract's language governs its interpretation if the "language is clear and explicit and does not involve an absurdity." *Petroflow Energy Corp. v. Sezar Energy, L.P.*, No. 16-CV-700-TCK-JFJ, 2017 WL 4399193, at *4 (N.D. Okla. Oct. 3, 2017) (citing Okla. Stat. tit. 15, § 154). Only when the written agreement is ambiguous may a court look to extrinsic evidence to discern the parties' intent. *See Ben-Trei Overseas, L.L.C. v. Gerdau Ameristeel US, Inc.*, No. 09-CV-153-TCK-TLW, 2010 WL 1410984, at *7 (N.D. Okla. Mar. 31, 2010) (collecting cases).

Defendants challenge whether Plaintiffs can prove the second element – breach of the Operating Agreements. Plaintiffs assert two types of breach: (1) breach of Section 3.7, upon Defendants' demand for additional contributions in the Allocations Memo without Plaintiffs' consent; and (2) breach of Section 12.2 and Article IX, upon Defendants' unilateral Amendments

8

and subsequent expulsion and buyout of Plaintiffs.  Defendants contend Plaintiffs cannot prove either type of breach, and that they are entitled to judgment as a matter of law.  Defendants' arguments are unpersuasive, unsupported, and border on frivolous.

1. **Breach of Section 3.7 - Demand in Allocations Memo**

Although less than clear, Defendants appear to raise two alternative arguments.  First, Defendants appear to argue that the mutual intention of the parties, at the time of signing the Operating Agreements, was to contribute additional capital on an ongoing basis.  *See* ECF No. 72 at 7 ("Here, the Court should interpret the Operating Agreements to give effect to the mutual intention of the parties, which was to proportionally contribute resources to fund the new venture's success.").  However, Section 3.7 of the WeldNow and CD Investment Operating Agreements provides that the LLC members "shall not be obligated to contribute additional capital to the Company unless *all* of the Members agree to do so."  ECF No. 76-3 (emphasis added); ECF No. 76-4 (emphasis added).[8]  Defendants' contention that Plaintiffs agreed to proportionally contribute resources to fund the venture throughout its life, with no further agreement needed, is directly contrary to the plain contractual language.  The plain language states that the members are not obligated to make additional capital contributions unless they all agree.  Defendants ask the Court to give effect to a "mutual intention" that contradicts the plain language of the Operating Agreements, and the Court rejects the first argument.[9]

---

[8] In addition, Section 12.2 of the CD Investment and WeldNow Operating Agreements prohibits amendment of Section 3.7 without a unanimous vote of the members.

[9] Defendants do not appear to be requesting the Court to find ambiguity and consider extrinsic evidence, nor did they cite any extrinsic evidence.  To the extent such request is made, the Court finds no ambiguity and declines to consult extrinsic evidence to discern the parties' intent in Section 3.7.

Second, Defendants appear to argue that Plaintiffs agreed to contribute additional capital after entry of the Operating Agreements, such that the Allocations Memo reflected an agreement and therefore did not breach Section 3.7.  *See* ECF No. 72 at 7 ("As contemplated by Section 3.7, the LLC members agreed to make additional contributions in proportion to the number of units held," but "Plaintiffs failed to do so").  However, Defendants submitted no facts or evidence in support of this purported agreement to make the additional capital contributions demanded in the Allocations Memo.  Defendants did not submit an affidavit, deposition testimony, or any other evidence of discussions or an agreement reached between Plaintiffs and Defendants prior to the Allocations Memo.  In contrast to this absence of evidence, Daoud testified in his deposition that he was presented with the Allocations Memo as a demand for amounts owed.  ECF No. 70-1 at 171:3-172:22.  Daoud testified that he never agreed to the demand in the Allocations Memo, either before or after its receipt.  ECF No. 70-1 at 171:4-7 ("The conversation with Larry [Davis], basically, came down to this is what you owe, are you going to pay it, yes or no.  And my answer was no.").  Further, Defendants' own Statement of Material Uncontroverted Facts describes the Allocations Memo as a request that was ultimately refused by Daoud.  ECF No. 72 at 2 (Def. Material Uncontroverted Fact No. 10) (stating that, "[b]etween April and July 2021, Daoud and AMSU were both *asked* to make additional capital contributions, and both *refused* to do so").  This belies the existence of an agreement contemplated by Section 3.7.  The summary judgment record does not demonstrate that Plaintiffs agreed to contribute additional capital contributions, as contemplated by Section 3.7, and the Court also rejects the second argument.

### 2. Breach of Section 12.2/Article IX – Amendments

Again, Defendants' arguments are less than clear.  First, Defendants appear to contend they were entitled to make unilateral amendments to Article IX to ensure the ventures' success.  *See*

ECF No. 72 at 8 (arguing that Defendants "harmonized the Operating Agreements" to provide for the ventures' success, including "refining the Operating Agreements' member expulsion provision to allow for expulsion of members without unanimous consent"). Article IX of the Operating Agreements provides specific grounds for dissociation of members, along with buyout provisions with a specified calculated value for member units. Despite Defendants' argument otherwise, Section 12.2 prohibits amendment of Article IX without unanimous vote of the members. It is undisputed that Defendants failed to obtain Plaintiffs' consent for the Amendments, which ultimately permitted expulsion of Plaintiffs and eliminated protections provided by the buyout calculations in Article IX. In seeking summary judgment, Defendants ignore the clear limitations on amendment to Article IX provided in Section 12.2, and they wholly fail to explain why they were authorized to amend Article IX without a unanimous vote. Defendants identify no part of the Operating Agreements that would permit such unilateral amendment.[10]

Second, Defendants appear to argue that Plaintiffs' actions of refusing to contribute additional capital authorized or justified the Amendments. *See* ECF No. 72 at 8 (accusing Plaintiffs of "double dealing," which made "refinements . . . necessary to effectuate the original intent of the contract"). Again, however, Defendants do not cite any specific provision of the Operating Agreements that would permit non-unanimous amendment of Article IX based on a member's refusal to provide additional capital or other type of breach. In any event, Defendants did not move for summary judgment on their own counterclaim for breach of contract against Plaintiffs, which is based in part on Plaintiffs' refusal to pay the $600,996.60 when demanded in the Allocations Memo. As a corollary, Defendants have not shown entitlement to summary

---

[10] Defendants do not argue that the amended expulsion and buyout provisions were not actually amendments to Article IX. Instead, they simply ignore Section 12.2's prohibition.

11

judgment on the question of whether Plaintiffs' refusal to pay justified or excused any breach of Section 12.2.

Finally, Defendants argue they are entitled to summary judgment on whether they breached Section 12.2, because their actions complied with Oklahoma law. *See* ECF No. 72 at 8 ("Defendants ensured that [the Amendments] included a reasonable provision for the buyout of the members' capital interest which allowed the remaining member(s) to 'purchase' the expelled member's units for $100, consistent with § 2036."). Oklahoma law provides that an LLC's "operating agreement may provide for the expulsion of a member, with or without cause, which shall include reasonable provision for the buyout of the member's capital interest." Okla. Stat. tit. 18, § 2036(D). This argument fails for two obvious reasons. First, Oklahoma law providing general authority for an operating agreement to permit expulsion without cause does not obviate Defendants' obligation to comply with any express provisions in a contract, such as Section 12.2 or Article IX. Second, even assuming the Amendments were somehow legal and effective, Defendants made no attempt to establish that the $100 buyouts permitted by the Amendments were "reasonable provision[s] for the buyout of the member's capital interest." *Id.* It is undisputed that Plaintiffs paid $252,000 to WeldNow and $200,875 to CD Investment. Defendants made no attempt to establish, by citations to evidence or legal authority, that $100 was a "reasonable" buyout for Plaintiffs' units in their respective LLCs.[11]

Defendants failed to demonstrate entitlement to summary judgment on Plaintiffs' breach of contract claim.

---

[11] No party offered evidence to show how much Plaintiffs paid for their respective units in CD Investment, WeldNow, or Buy Bye.

### B. Declaratory Judgment

Plaintiffs seek a declaratory judgment under 28 U.S.C. § 2201 that Defendants' unilateral amendments to the Operating Agreements are unlawful under the terms of the Operating Agreements themselves and 18 O.S. § 2036. ECF No. 2 ¶ 30. Plaintiffs further seek a declaration that they "should be reinstated as members of the Defendant LLCs." *Id.* Plaintiffs allege that "Defendants have placed the Warehouse Property on the market for sale," and "[i]f the property is sold, a substantial asset, paid for with payments made by Plaintiffs to Defendant LLCs, which were wrongfully retained by Defendants, is in immediate peril of being lost." *Id.* ¶ 29.

Defendants assert two grounds for summary judgment on this claim: (1) no "actual controversy" exists, as required for obtaining declaratory judgment, and (2) the Amendments were authorized by the Operating Agreements and/or Oklahoma law. The Court rejects both arguments.

#### 1. Actual Controversy

To obtain a declaratory judgment, a party must have an "actual controversy," consistent with Article III's case or controversy requirement. *Surefoot, L.C. v. Sure Foot Corp.*, 531 F.3d 1236, 1240 (10th Cir. 2008). To this end, a party seeking declaratory judgment must show "an injury-in-fact, connection between the challenged conduct and the injury, and redressability by the requested remedy." *AIDS Healthcare Found., Inc. v. Gilead Scis., Inc.*, 890 F.3d 986, 990 (Fed. Cir. 2018) (citing *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 103-04 (1998)).

Defendants challenge whether the declaratory judgment will actually redress Plaintiffs' alleged injuries, "because Plaintiffs' 'actual controversy' is untethered from the declaration they seek." ECF No. 72 at 4. Specifically, Defendants argue that, to the extent Plaintiffs seek to stop the potential sale of the Warehouse, a declaration that Plaintiffs should be reinstated as members of the three relevant LLCs does nothing to resolve that controversy. Defendants argue that

13

Plaintiffs' failure to seek an injunction to prevent any sale of the Warehouse renders the declaratory judgment claim defective as a matter of law.

The Court rejects Defendants' argument. If the Court declares the Amendments permitting expulsion to be unlawful and Daoud is thereby reinstated as a member of CD Investment, then Daoud would indeed have the ability to prevent the sale of the Warehouse. Section 5.2 of the CD Investment Operating Agreement provides that approval of "all the Members shall be required" for "[s]elling all or substantially all of the Company Property." ECF No. 76-4. Similarly, Section 5.2 of the WeldNow Operating Agreement provides that the Manager, Davis, "shall not, without the written consent or written ratification of the specific act by a unanimous vote of the Members," "[s]ell any Company Property (or assets, in related transactions) having a fair market value over $25,000." ECF No. 76-3. If Daoud were reinstated as a member of CD Investment, his vote would be required to sell the Warehouse. The Warehouse is valued well over $25,000, and the Warehouse constitutes a significant asset of CD Investment that may constitute "substantially all" of that LLC's property. ECF No. 76-3 at Section 5.2(D); ECF No. 76-4 at Section 5.2(C). Plaintiffs' failure to seek a preliminary injunction stopping sale of the Warehouse does not render the Court incapable of redressing the alleged by other means, including reinstating Plaintiffs to their positions in the LLCs.[12]

### 2. Contractual Language and Oklahoma Law

Defendants further argue that declaratory judgment would be improper as a matter of law, because the Amendments do not violate the terms of the Operating Agreements or Oklahoma law. The Court rejects these arguments for the same reasons explained above in Part IV.A.

---

[12] Until this case is resolved, Defendants could conceivably sell the Warehouse, which could eliminate the alleged controversy regarding the Warehouse. However, the Warehouse currently remains unsold, and the requested relief could stop the sale in the future.

Defendants failed to show that they are entitled to summary judgment on the declaratory judgment claim.

### C. Unjust Enrichment

"A right of recovery under the doctrine of unjust enrichment is essentially equitable, its basis being that in a given situation it is contrary to equity and good conscience for one to retain a benefit which has come to him at the expense of another." *Quarles v. Little River Energy Co.*, No. 00-CV-913-GKF-PJC, 2008 WL 185715, at *1 (N.D. Okla. Jan 18, 2008) (citing *Lapkin v. Garland Bloodworth, Inc.*, 23 P.3d 958, 961 (Okla. Civ. App. 2001)). A claim for unjust enrichment requires: (1) an enrichment to the adverse party; (2) an impoverishment to the claimant; (3) connection between the enrichment and the impoverishment; (4) an absence of justification; and (5) an absence of remedies at law. *Id.* at *1-2. "Where the plaintiff has an adequate remedy at law, the court will not ordinarily exercise its equitable jurisdiction to grant relief for unjust enrichment." *Id.* at *2 (citing *Harvell v. Goodyear Tire & Rubber Co.*, 164 P.3d 1028, 1035 (Okla. 2006)).

Defendants argue this alternatively pled claim fails as a matter of law, because the $100 buyouts did "not result in an injustice to Plaintiffs" and instead represented a reasonable buyout under the circumstances of Plaintiffs' refusal to contribute additional capital. ECF No. 72 at 9. The Court rejects this argument for the same reasons explained above in Part IV.A.2 – namely, Defendants offered no evidence or authority demonstrating the reasonableness of the buyout in light of Plaintiffs' prior contributions. Defendants further assert, without authority or evidence, that the Amendments' buyout provisions were "standard provision[s] that sophisticated businesses use and [are] in line with industry practice." ECF No. 72 at 10. This is merely an unsupported

argument, and the Court cannot consider Defendants' arguments as facts for summary judgment purposes. *See* Fed. R. Civ. P. 56(c), (e).

Defendants failed to demonstrate entitlement to summary judgment on Plaintiffs' unjust enrichment claim, and such claim may remain in the case as an alternative pleading. *See Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1030 (10th Cir. 2007) (permitting plaintiff to pursue unjust enrichment as an alternative claim under Oklahoma law, so long as plaintiff does not obtain double recovery for the same injuries).

## V.    Partial Motion – CD Industrial, Denning, and Davis (ECF No. 70)

### A.    CD Industrial

CD Industrial argues that it "does not currently have (and never has had) an Operating Agreement with either Plaintiff." ECF No. 70 at 3-4. CD Industrial attempts to use Daoud's own admissions in support of its motion. Specifically, Daoud testified in his deposition that the proper defendants in this case would be "the unitholders in the companies that expelled" him. ECF No. 70-1 (Daoud Dep.) at 186:9-14.

CD Industrial's argument is contrary to the evidence before the Court. As the evidence plainly shows, CD Industrial was a member and unitholder in both CD Investment and Buy Bye. *See* ECF No. 76-4 at 24 (showing CD Industrial owned 45% of units in CD Investment as of January 2021); ECF No. 78-2 at 4 (showing CD Industrial owned 55% of units in Buy Bye as of January 2021). Daoud also was a party to the CD Investment and Buy Bye Operating Agreements. CD Industrial cites no supportive record evidence showing that it was *not* a unitholder in those two companies that expelled Daoud, and the record evidence is directly contrary to this assertion.

In the reply brief, CD Industrial argues that Daoud "admitted that the parties were incorrectly sued," and Plaintiffs' failure to refute this "fact" means that it is uncontroverted and

16

should be accepted by the Court. ECF No. 82 at 6 n.9. However, Daoud did not "admit" that any of the Defendants were incorrectly sued. Daoud testified to his belief that the unitholders of the LLCs that expelled him were the proper parties to be sued. Even if Plaintiffs were held to this testimony, CD Industrial failed to show that it was *not* a unitholder of CD Investment and Buy Bye at the time of Daoud's involuntary expulsion.

CD Industrial has not demonstrated entitlement to summary judgment on any claim against it.

### B.      Denning

Denning argues that he cannot be sued individually because he was not a party to the Operating Agreements central to this case. Denning relies on an "admission" by Daoud in his deposition that he sued Denning personally based on his lawyer's advice. ECF No. 70-1 at 185:9-10.

As with CD Industrial, Denning's argument is nonsensical in light of the Operating Agreements themselves. Denning personally signed the CD Investment Operating Agreement in January 2021 in his individual capacity, and he personally held 17.50% of the units in CD Investment. ECF No. 76-4 at 23-24. Denning also personally signed the January 2021 Amendment to the Operating Agreement for Buy Bye in his individual capacity, and he personally held 22.50% of the units in Buy Bye. ECF No. 78-2 at 3-4. Daoud's supposed "admission" that he relied on his lawyer's advice in suing Denning does not show that Denning was improperly sued.

Denning has not demonstrated entitlement to judgment as a matter of law on any claim against him individually.

### C. Davis

Davis argues that he should not have been sued in his individual capacity. Davis contends that he was not personally responsible for any alleged harm to Plaintiffs because he was not a party to the Operating Agreements. Like Denning, Davis relies on an "admission" by Daoud in his deposition that he sued Davis personally based on his lawyer's advice. ECF No. 70-1 at 185:9-10.

Davis' argument fails with respect to the claims against him for unjust enrichment and declaratory judgment. Davis was the Manager for CD Investment, WeldNow, and Buy Bye at the time of Plaintiffs' participation in and expulsion from those companies, according to their Operating Agreements. Davis was both the sole member of CD Industrial, and the CEO of AgoNow. After Daoud was expelled from CD Investment and paid $100 for his units, CD Investment's Warehouse property was used as collateral to obtain a $2.5 million line of credit for AgoNow. Plaintiffs' allegations related to Davis could demonstrate Davis' personal unjust enrichment flowing from the allegedly unlawful Amendments. Plaintiffs' claims for declaratory judgment also pertain to those same issues of unlawful amendment and expulsion from CD Investment, in which Davis personally participated as the Manager. Daoud's "admission" that he relied on his lawyer's advice in suing Davis does not show that Davis was improperly sued on these equitable claims.

However, the Court finds that the claim against Davis for breach of contract must be dismissed. Davis was not an individual member of any of the three LLCs that expelled Plaintiffs. Plaintiffs cannot show Davis individually breached the Operating Agreements, when he was not a party to such agreements. In the response brief, Plaintiffs suggest that Davis had certain duties as Manager that he breached in violation of Oklahoma law. However, Plaintiffs did not plead any

breach of fiduciary duty or other similar breach of duty in the Complaint, and the Court is limited to consideration of the claims Plaintiffs actually pled against Davis.

Davis has not demonstrated entitlement to summary judgment on the equitable claims against him individually for unjust enrichment or declaratory judgment. Davis has, however, demonstrated entitlement to summary judgment on the claim for breach of contract, because he is not an individual party to the Operating Agreements.

## VI. Conclusion

For the reasons detailed above, Defendants' Motion for Summary Judgment (ECF No. 72) is **DENIED**. Defendants' Partial Motion for Summary Judgment (ECF 70) is **DENIED** as to CD Industrial and Denning, **DENIED** as to the claims for unjust enrichment and declaratory judgment against Davis, and **GRANTED** as to the claim for breach of contract against Davis.

**SO ORDERED** this 21st day of February, 2025.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**